UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL GRECCO PRODUCTIONS, INC.,

        Plaintiff,

     - against -             **MEMORANDUM AND ORDER**

TIME USA, LLC and PIXELS.COM, LLC,      20 Civ. 4875 (NRB)

        Defendants.
----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


Plaintiff Michael Grecco Productions, Inc. ("MGP" or "plaintiff") brings this action against defendants Time USA, LLC ("Time") and Pixels.com, LLC ("Pixels") (together, "defendants") alleging copyright infringement and falsification of copyright management information ("CMI"). Plaintiff alleges that Time, on its own and through third parties, including Pixels, infringed its copyrights by exceeding the scope of certain license agreements when it reproduced Time covers that featured MGP's photographs on print-on-demand products. Plaintiff also alleges that defendants falsified CMI by publishing the Time covers online with CMI and watermarks that do not attribute the photographs to plaintiff. Defendants jointly move to dismiss plaintiff's amended complaint, ECF No. 20 ("Compl."), or in the alternative, for summary judgment.

I.   **Background**[1]

Michael Grecco is a commercial photographer, whose works are owned by plaintiff MGP.  Defendant Time is the current owner of the trademark for the American weekly news magazine and website, "Time."[2]  Defendant Pixels owns and operates a number of "print-on-demand" websites, including www.fineartamerica.com.  Print-on-demand websites allow consumers to select images for printing on a variety of products, including on canvas, metal, and wood, which are made-to-order upon purchase.

In 2000 and 2005, MGP signed two substantially similar agreements with Time Magazine (the "Agreements"),[3] which granted to Time Magazine licenses to use three of Grecco's photographs (the "Photographs") on its covers.  Each of the Photographs is

---

[1] The following facts, which are drawn from the operative complaint, are accepted as true for purposes of the Court's ruling on defendants' motion to dismiss.  The Court draws all reasonable inferences in plaintiff's favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).  Additionally, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).  Thus, here, we consider the license agreements and the covers at issue.

[2] Defendants explain that in 2018, defendant Time, formerly known as "You.com USA, LLC," purchased all assets related to the United States operations of Time Magazine, formerly a division of Time Inc., including the TIME trademark and all rights to publish written and graphic material associated with Time Magazine.  As a result, defendant Time succeeded to the rights of Time Magazine set forth in the license agreements with plaintiff.  Plaintiff does not dispute this characterization, and moreover, refers to defendant Time as the "current owner" of the trademark for the American weekly news magazine and website "Time" in its amended complaint.  See Compl. ¶ 15.

[3] The Agreements themselves appear to have been signed by "Michael Grecco Photo, Inc." and "Michael Grecco Photography, Inc."  However, as plaintiff alleges that MGP licensed the Photographs, and because defendants do not dispute this characterization, we accept plaintiff's allegations as true.

registered with the Register of Copyrights, and MGP owns each of the Photographs.  The Agreements provided that Time Magazine had the right to do "customary editorial work to incorporate the photograph into the cover, including cropping the image and overlaying text and the TIME logo."  ECF No. 20-4 (2000 and 2005 Agreements).  The Agreements also contained this description of the licenses:

> Ownership of the photograph and the copyright in it remain with you.  However, TIME Magazine retains the right to reproduce the cover of the Magazine as it appears, in any media, for any purpose, in perpetuity without additional payment.

Id.

In the amended complaint, plaintiff included copies of the covers (the "Covers") that integrated the Photographs. As is clear from the images of the Covers, the Time Magazine Covers included the Photographs with an overlay of the TIME logo and identifiable red frame (both of which are trademarked with the United States Patent and Trademark Office).[4]   The Covers also feature text, including the date and previews of articles included in the magazine issue.

---

[4] The Court may take judicial notice of records of the United States Patent and Trademark Office.  Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014).

Recently, Time began working with Pixels to facilitate the sale of print-on-demand products from Time's "Cover Store," which features decades of Time covers, including the Covers at issue in this case.  On Pixel's website, a shopper can view the Covers via a "full resolution preview," which displays the Covers with a watermark that superimposes the name of the website, "fineartamerica.com" (the name of one of Pixel's websites).  Alongside the Covers, the artist is listed as "Time."

MGP initiated this case shortly after Time announced its partnership with Pixels, alleging a claim for copyright infringement in violation of 17 U.S.C. § 501 and a claim for falsification of CMI pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(a).  On October 27, 2020, defendants moved to dismiss the amended complaint, or in the alternative, for summary judgment.  Plaintiff opposed the motion on November 24, 2020, and defendants submitted a reply in further support of their motion on December 1, 2020.

## II.   **Legal Standard**[5]

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as

---

[5] Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, in the event that the Court deemed it necessary to rule on matters such as the transfer of rights between defendant Time and Time Magazine and the offerings in the Time Cover Store, defendants moved for summary judgment.  Given that the transfer of rights

true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the [pleaded] fact[s] . . . allow[] the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged."  Id.  While the Court accepts the truth of
the pleaded facts, it is "not bound to accept as true a legal
conclusion couched as a factual allegation."  Id.  "Threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  Brown v. Daikin Am., Inc.,
756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

III.  **Discussion**

> **a. Copyright Infringement**

Count I of the amended complaint alleges that defendants
committed copyright infringement when they reproduced the Covers
on print-on-demand products.  According to plaintiff, this type of
reproduction exceeds the scope of the licenses set forth in the
Agreements.  "To establish an infringement of a copyright, a
plaintiff must show both ownership of a copyright and that
defendant copied the protected material without authorization."
John Wiley & Sons, Inc. v. DRK Photo, 998 F. Supp. 2d 262, 287

---

to defendant Time is not in dispute, we will rule on defendants' motion to
dismiss.

(S.D.N.Y. 2014) (citing <u>Rogers v. Koons</u>, 960 F.2d 301, 306 (2d Cir. 1992)).  Copyright infringement actions such as this one, "involving only the scope of the alleged infringer's license[,] present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the [relevant] activities." <u>Bourne v. Walt Disney Co.</u>, 68 F.3d 621, 631 (2d Cir. 1995).  "[I]n cases where only the scope of the licenses is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized." <u>Yamashita v. Scholastic Inc.</u>, 936 F.3d 98, 104-05 (2d Cir. 2019) (citing <u>Bourne</u>, 68 F.3d at 631).

Pursuant to New York law, whether a contractual provision is ambiguous, and the interpretation of an unambiguous contract, are questions of law for the Court to resolve.  <u>HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP</u>, 7 F. Supp. 3d 363, 370 (S.D.N.Y. 2014) (citations omitted).  A contract is ambiguous only if "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." <u>Goldman Sachs Grp., Inc. v. Almah LLC</u>, 924 N.Y.S.2d 87, 90 (1st Dep't 2011) (internal citation and quotation marks omitted).  In determining the meaning of a contract, this Court will "look to all corners of the document rather than view sentences or clauses in isolation." <u>Int'l Klafter Co. v. Cont'l Cas. Co., Inc.</u>, 869 F.2d 96, 99 (2d Cir. 1989)

(internal quotation marks omitted).  "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."  <u>W.W.W. Assocs., Inc. v. Giancontieri</u>, 77 N.Y.2d 157, 162 (N.Y. 1990)).

This dispute turns on the meaning of the provision in the Agreements:

> TIME Magazine retains the right to reproduce the cover of the Magazine as it appears, ***in any media, for any purpose, in perpetuity*** without additional payment.

(emphasis added).  Proffering that the provision is ambiguous, plaintiff asserts that his understanding was that "all media" — a term that does not actually appear in the provision[6] — referred exclusively to "means of mass communication."[7]  Therefore, argues

---

[6] Plaintiff's bold attempt to switch the words of the provision from "any media" to "all media" is a transparent effort to rely on the definition of "all media" set forth by a non-profit initiative called the Picture Licensing Universal System ("PLUS"), which, according to plaintiff, defines "all media" as a "licensing language granting use in all types of communication."  Opp. to Defs.' Mot. to Dismiss ("Opp."), ECF No. 37, at 3.  For a multitude of reasons that fall outside of the contours of the motion to dismiss — including that the PLUS glossary on which plaintiff relies arguably did not exist when the Agreements were signed — we do not rely on the definition in the PLUS glossary, especially because the Agreements nowhere indicate that their terms are to be defined in accordance with the PLUS glossary.

[7] Plaintiff's allegations, which are contrary to the plain language of the Agreements, must be rejected. <u>See</u> Compl. ¶ 23 (alleging that the Agreements granted only a limited license for the use of the Photographs "as the cover photos"); ¶ 25 (alleging that the term "any media" refers to "reproduction by means of mass communication").  <u>Endemann v. Liberty Ins. Corp.</u>, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019), <u>on reconsideration in part</u>, No. 18 Civ. 701, 2020 WL 5027241 (N.D.N.Y. Aug. 25, 2020) (citing <u>Roth v. Jennings</u>, 489 F.3d 499, 510-11 (2d Cir. 2007)) ("When documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true."); <u>see also</u> <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419, 422 (2d Cir. 2011) (explaining that allegations are "assume[d] to

plaintiff, defendants' reproduction rights with respect to the Covers are limited to modes of communication, and print-on-demand products fall outside of this category.

As an initial matter, the actual term "any media" admits of no such ambiguity.  Therefore, plaintiff's understanding of the term has no effect on our interpretation.  Instead, as "a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use," Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992), we look to the dictionary definition of "media."

"Media" is the plural version of "medium," and so we begin there.  There are, of course, multiple definitions of "medium" — some of which even reflect plaintiff's narrow communications-related definition.  However, the comprehensive scope of the licensing provision, which imparts Time's right to use the Covers "in any media, for any purpose," without time restriction, directs us to refer to a similarly comprehensive definition of "medium." Thus, according to the Merriam-Webster Dictionary, "medium" is "a means of effecting or conveying something," including the "material or technical means of artistic expression (such as paint and canvas, sculptural stone, or literary or musical form)." Likewise, the Oxford English Dictionary defines "medium" as "[a]ny

---

be true unless contradicted by more specific allegations or documentary evidence").

8

of the varieties of painting or drawing as determined by the material or technique used.  Hence more widely: any raw material or mode of expression used in an artistic or creative activity." These definitions of "medium" unequivocally encompass the print-on-demand products, including prints on canvas, wood, and metal, that are the subject of this case.  As "the licensee may properly pursue any uses which may reasonably be said to fall within the medium as described in the license," Bartsch v. Metro-Goldwyn-Mayer, Inc., 391 F.2d 150, 155 (2d Cir. 1968), we conclude that defendants are not violating the provision.

Beyond the definition of "media" itself, the remainder of the provision provides additional support for defendants' interpretation, with which the Court agrees.  First, the Agreements provide that Time can reproduce the Covers for "any purpose" — not, as plaintiff suggests, only for communications-related purposes.  Second, the provision uses the expansive contractual language "in perpetuity" — a clause that contemplates evolving modes of and technologies for reproduction over time.  This easily disposes of plaintiff's argument that the Agreements could not have authorized reproduction of the Covers on print-on-demand products because the print-on-demand business did not yet exist in 2000 and 2005, when the Agreements were executed, even if that were the case.  See, e.g., HarperCollins, 7 F. Supp. 3d at 372 (finding that a 1971 licensing agreement permitted publication of

an e-book 40 years later "[i]n light of precedent indicating that broad grant language will extend to later-invented uses") (citation omitted). Third, and relatedly, the provision does not limit reproduction of the Covers to modes of then-existing technology — a carve-out that plaintiff could have negotiated, but did not. Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 487 (2d Cir. 1998) ("the party seeking exception or deviation from the meaning reasonably conveyed by the words of the contract should bear the burden of negotiating for language that would express the limitation or deviation."); see also Bartsch, 391 F.2d at 155 (if "the words" of the license "are broad enough to cover the new use, it seems fairer that the burden of framing and negotiating an exception should fall on the grantor").[8]

The amended complaint also suggests that Pixels infringed plaintiff's copyrights when Time engaged Pixels to "power" Time's Cover Store. Again, plaintiff is incorrect. Where, as here, a licensor has granted a non-exclusive license to a licensee, the licensee may rely on agents "in carrying out permitted uses without converting those agents into independent licensees." Great Minds

---

[8] Plaintiff's tangential reference to New York Times Co. v. Tasini, 533 U.S. 483 (2001), does not require a different conclusion, as that case contemplated the scope of the reproduction and distribution privilege afforded to collective work copyright owners by 17 U.S.C. §201(c) — a statutory provision not at issue in this case. See id. at 499 ("the Publishers do not here contend the Authors entered into an agreement authorizing reproduction of the Articles in the Databases.").

v. Fedex Off. & Print Servs., Inc., 886 F.3d 91, 96 (2d Cir. 2018).
Plaintiff has not alleged that there is any restriction on using
third-party agents, nor have we found any such restriction in the
Agreements.   Thus, we hold that the Agreements permitted Time to
delegate the reproduction efforts to Pixels.   See id. (citing
Automation By Design, Inc. v. Raybestos Prods. Co., 463 F.3d 749,
757 (7th Cir. 2006) (reasoning that if a license "allowed Raybestos
to make photocopies of [certain] designs[,] ... Raybestos could
certainly take the designs to a Kinko's photocopy shop to have
them copied"); Estate of Hevia v. Portrio Corp., 602 F.3d 34, 44–
45 (1st Cir. 2010) ("When . . . there is no indication that a
[licensor] has restricted the licensee's ability to use third
parties in implementing the license, the license is generally
construed to allow such delegation.")).

As the language of the Agreements explicitly permits the
reproduction of the Covers "in any media," "for any purpose," "in
perpetuity," we conclude that defendants have not exceeded the
scope of the licenses set forth in the Agreements.[9]

### b. Falsification of CMI

Count II of the amended complaint alleges that the
"fineartamerica.com" watermark and the website's attribution

---

[9] We also note that another court in this District recently assessed a
substantially similar agreement with Time and reached the same outcome.   See
APL Microscopic, LLC et al. v. Pixels.com, LLC and TIME USA, LLC, No. 20 Civ.
4735 (S.D.N.Y.) (GBD) ("APL Microscopic").   Contrary to his obligation to do

crediting "Time" violate Section 1202(a) of the DMCA.[10]   Section 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false."  17 U.S.C. § 1202(a).  For purposes of this provision, CMI is defined to include "[t]he name of, and other identifying information about, the author" and/or "the copyright owner of [a copyrighted] work," when such information is "conveyed

_____

so, plaintiff failed to alert us to this contrary authority.  Nevertheless, we have reviewed it in detail and find the Court's characterization of Time's reproduction rights particularly persuasive:

> There's no media restriction on the use of the Time Magazine cover.  There's no timeframe restriction on how they can use it and there's no restrictions [sic] on the purpose for which they could use it . . . [T]he reality is they could have taken the Time Magazine cover and made toilet paper out of it if they want to because it's their right to do so because they've modified the photo.

ECF No. 41-2 (Tr. of Apr. 28, 2021 Oral Arg., APL Microscopic) at 32.  We concur with Judge Daniels' decision to dismiss plaintiff's complaint in its entirety on the basis that "it is not a reasonable interpretation of the language in this agreement, to say that this agreement limits the use or even the manner in which it can be published and where it can be published and how it can be published."  Id. at 40-41.

[10] In its opposition, plaintiff also argues that it has alleged a claim under Section 1202(b), which does not allow the removal or alteration of CMI.  As plaintiff failed to reference this provision in the amended complaint and, in any event, fails to provide any credible arguments to support such a claim, we do not consider it here.

in connection with copies . . . of a work."  Id. § 1202(c)(2)-(3).
Plaintiff's claim fails for two reasons.

First, plaintiff's claim improperly conflates the Photographs
with the Covers.  Here, Time created unique Covers using
plaintiff's Photographs, on which Time overlayed the Time logo,
the trademarked Time red border, and text.  At no time did the
defendants claim ownership of the Photographs.  Instead, the
watermark and attribution represent defendants' reproduction
rights with respect to the Covers.  The Agreements draw this
distinction, see ECF No. 20-4 ("Ownership of the **photograph** and
the copyright in it remain with you.  However, TIME Magazine
retains the right to reproduce the **cover** . . .") (emphasis added),
and in turn, so do we.  In any event, a party that puts its own
CMI on work distinct from work owned by a copyright holder is not
liable under Section 1202(a), even if the party's work incorporates
the copyright holder's work.  See, e.g., Park v. Skidmore, Owings
& Merrill LLP, No. 17 Civ. 4473, 2019 WL 9228987, at *11 (S.D.N.Y.
Sept. 30, 2019) (dismissing DMCA claim where the "defendant
incorporated the plaintiff's copyrighted materials into its own
work and then applied its name as the author of the work," as "the
defendant did not violate the DMCA by printing its name on the
distinct products it had generated").[11]  The watermark and

_____

[11] As distinct from Fischer v. Forrest, No. 14 Civ. 1304, 2015 WL 195822,
at *8 (S.D.N.Y. Jan. 13, 2015), which denied a motion to dismiss a DMCA claim,

Case 1:20-cv-04875-NRB   Document 42   Filed 07/27/21   Page 14 of 15

attribution identify rights with respect to the Covers — not the Photographs, which are just one element of the Covers.

Second, Section 1202(a) requires that plaintiff allege that defendants provided, distributed, or imported false CMI information with the "intent to induce, enable, facilitate, or conceal infringement," but plaintiff fails to allege scienter. Plaintiff's conclusory allegations in the amended complaint, which simply recite the elements of a Section 1202(a) claim, are obviously insufficient.  See Iqbal, 556 U.S. at 678.[12]  In the absence of any substantive allegation whatsoever, we are not persuaded by plaintiff's argument that questions of intent and purpose are improper for resolution at this stage.

As plaintiff failed to allege that defendants falsified CMI on the Covers or that defendants possessed the requisite scienter, plaintiff's claim for falsification of CMI must be dismissed.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Court grants defendants' motion to dismiss in its entirety.   The Clerk of Court is

---

here there are no allegations that defendants actually removed plaintiff's CMI before displaying the Covers on Pixel's websites.   Indeed, there is no allegation that the Covers ever featured plaintiff's name.

[12] In this respect, this case is distinct from another one of plaintiff's cases, <u>Michael Grecco Prods., Inc. v. Alamy, Inc.</u>, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019).   There, the court concluded that plaintiff adequately pled scienter where plaintiff alleged that defendant knew that the expiration of a license "deprived it of the authority to further license and display the Copyrighted Works without further permission from Plaintiff," but nevertheless "placed watermarks on the Copyrighted Works in order to facilitate its continued marketing and sale of licenses." <u>Id.</u>

respectfully directed to terminate the motion pending at docket
entry 26 and to close the case.

       **SO ORDERED.**

DATED:     New York, New York
             July 27, 2021

                                 NAOMI REICE BUCHWALD
                         UNITED STATES DISTRICT JUDG